MISSOURI PUBLIC SERVICE COMPA-
NY, Plaintiff-Appellant,

v.

ALLIED MANUFACTURERS, INC., et
al. (Exceptions of Mesco Industries,
Inc.), Defendant-Respondent.

No. KCD 29754.

Missouri Court of Appeals,
Kansas City District.

Nov. 27, 1978.

Gary J. Brouillette, John R. Weinsenfels, Jackson, Dillard, Brouillette & Farchmin, Kansas City, for plaintiff-appellant.

George H. Charno, Jr., James P. Jouras, Kansas City, for defendant-respondent.

Before HIGGINS, Special Judge, Presiding, PRITCHARD, J., and WELBORN, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge, Presiding.

Action in eminent domain to impose easement on real estate owned by Mesco Industries, Inc., for electric transmission and distribution lines. Appeal by Missouri Public Service Company from verdict which awarded landowner $103,000 for the taking and judgment entered thereon. Appellant questions rulings by the court on admission of testimony and evidence on behalf of landowner and on landowner's argument, and whether the verdict was against the weight of the evidence and a result of passion and prejudice. Affirmed.

Plaintiff condemned 18 tracts of land for construction, maintenance and operation of electric transmission and distribution lines consisting of towers, poles, wires, crossarms, insulators, guy wires, and other structures, appurtenances and appliances necessary for transmission and supply of electric energy between Blue Springs and Raytown, Missouri, and to the public in other areas situated beyond such points. Included was a 2.19-acre tract owned by Mesco. An easement was taken along the northern boundary of the tract, overlapping railroad right of way, extending 30 feet south into the tract, and amounting to 17,240 square feet, approximately 18% of the total tract. Mesco could use the north 20 feet of the easement but could not erect any improvements without consent of the company. It could

erect improvements limited to 14 feet in height on the south 10 feet. The date of taking was June 23, 1972. Condemnation commissioners assessed Mesco's damages at $13,000; both sides excepted.

Mesco offered two witnesses on its damages. Carl Magers, one of two owners of Mesco, described Mesco's premises and operation and the effect of the easement. In his opinion the difference in value of Mesco's tract before and after imposition of the easement was $105,000. Aubrey Loyd, an industrial developer, used a square-foot approach and, in his opinion, imposition of the easement depreciated the value of Mesco's tract $103,000. Missouri Public Service Company offered Curtis Bliss, a real estate appraiser. Mr. Bliss used a comparable sales approach and, in his opinion, Mesco's damages amounted to $10,500.

Appellant charges the court erred (I) in admitting the testimony of Carl Magers because his identity was not revealed in answer to Interrogatory 22.

Plaintiff propounded original interrogatories January 24, 1974, and supplemented them October 31, 1975. Supplemental interrogatory 22 asked defendant:

"State the name and address of any person, firm or corporation known to you or anyone acting on your behalf who has knowledge of or who has formed an opinion as to the extent of damage sustained by defendants as a result of the condemnation of the power line easement over real estate owned by them * * *."

Defendant responded: "Aubrey C. Loyd, Ten Main Center, Kansas City, Mo."

Carl Magers was mentioned as an opinion witness on value of and damages to Mesco's property during defendant's opening statement, at which time plaintiff complained[1] of surprise in that Mr. Magers had not been named in response to interrogatory 22. Action was deferred by the court for determination "before we get to this witness." Such prior determination was not made and

Mr. Magers testified on direct examination without objection as follows:

"Q. Mr. Magers, what was the value of your property in your opinion after you had completed all of the improvements you testified about yesterday and before the easement was imposed on it? * * * A. Approximately $255,000. Q. And do you have an opinion as to the value of this property after the easement was imposed, the change in value as a consequence of all of the things you have testified in great detail here? * * * A. My opinion, it would have cut the value to $150,000. Q. And the difference between 255 and 150 [$105,000], you are stating that you, in your opinion, this property has been depreciated in value by the imposition of the easement? A. Yes."

In its motion for new trial, plaintiff asserted it should have a new trial on the ground "the court overruled plaintiff's objections[2] with regard to the testimony as to damages elicited from witness Carl Magers when * * * in answering Interrogatory 22 * * * defendant did not list witness Carl Magers as being a potential witness regarding damages, and thus the court should not have allowed Carl Magers to testify as to damages which came as a complete surprise to plaintiff and voided * * * plaintiff's case preparation."

Appellant argues that the trial court abused its discretion by failure to exclude Mr. Magers as a witness as provided in Rule 61.01 because he was not disclosed in answer to interrogatory 22.

Appellant's record did not preserve the point now urged for review. Rule 84.13. In any event, admission or rejection of testimony of a witness whose name was not revealed by answer to interrogatory is within the discretion of the court. *Thomas v. Fitch,* 435 S.W.2d 703 (Mo.App.1968). No abuse of discretion on account of surprise to plaintiff appears here because plaintiff had

1. The record does not show an objection at this reference or at any other place.

2. Again, there is no reference to, nor does the record reveal, such action and objections. Neither is there any record by way of motion to strike.

adequate notice of the likelihood of Mr. Magers as a witness for defendant. By answer to interrogatories 1 and 2(a) through (h), plaintiff was advised that Mesco acquired subject property December 1, 1967, by purchase for $55,000 with a value at purchase of $75,000 to $100,000, at condemnation of $208,000, after condemnation of $105,000, and that D. R. Magers, Carl Magers, and Aubrey C. Loyd had knowledge of each of the above matters. See *First Nat. Bank of Cape Girardeau v. Socony Mobil Oil Co.*, 495 S.W.2d 424, 435 (Mo. 1973). Too, Mr. Magers was an owner-partner in Mesco. Failure, if so, to disclose his identity in response to interrogatory seeking names of expert witnesses furnishes no ground for denial of his company's proffer of his testimony on value because he, as an owner, is not an "expert witness" in the usual sense. *Krug v. United Disposal, Inc.*, 567 S.W.2d 133, 135 (Mo.App.1978).

■ Appellant charges the court erred (II) in admitting testimony of Carl Magers and Exhibits 5 and 6 as to plans for future expansions of defendant's facilities "which were not in being at the time of taking," asserting that defendant had no plans "reduced to writing," and that its evidence was "speculative and conjectural and whose purpose and effect was to enhance defendant's damages because it was prevented from carrying out its plan."

Defendant's theory, in the testimony of Mr. Magers and Mr. Loyd, was that in addition to the damage it sustained by appropriation of its property into plaintiff's easement, it also sustained damages to the remaining property. Defendant proffered the questioned evidence in connection with this theory.

Mesco engaged in industrial metal fabrication, principally for the airline industry. Prior to 1967, its plant was located in Grain Valley. The Grain Valley site did not provide adequate facilities for expansion of the business; and, after search, Mesco acquired the tract in question in Blue Springs. The existing improvements at the Blue Springs site were approximately the same as in Grain Valley, 11,000 square feet, but with room for expansion, zoned for heavy industry, and situated in an industrial park. It abutted 10th Street on the west. The street was unimproved, and defendant conveyed 25 feet of its property to the city for widening and paving. The main building upon acquisition was essentially a shell which defendant reworked to make it adaptable to its operation, including "knock-out" walls for connections with proposed future construction. Refurbishment was a continuing process. Site improvements were also made to provide parking areas, drainage, landscaping, and equipment areas. Part of such improvements were to the railroad right of way on the north. A shot-blasting addition was made to the paint shop. Underground gasoline storage and pump were installed. In 1970, Mesco announced publicly its plans for three expansions of its principal structure as it stood after the paint shop addition. A machine shop of 1,344 square feet, a shear room of 5,350 square feet, and an additional building of 3,000 square feet were constructed. Physical construction of a shear room of 2,000 square feet, an addition to the office of 360 square feet, and additions extending to the shear room, and an extension of the paint shop of 1,650 square feet, was abandoned on account of the easement. A portion of the proposed machine shop on a part of the easement had to be eliminated, reducing its size by 990 square feet. These matters were discussed by Carl Magers and embodied in schematic drawings, Exhibits 5 and 6. Exhibit 4 was three detailed drawings, dated in 1971, also bearing on the intended and abandoned expansion. Exhibit 6 portrayed omission of a corner of the machine shop due to imposition of the easement.

■ It would be difficult if not impossible to reconcile the cases on this issue because each speaks to its own facts. Generally, it may be said that the admissibility of evidence of planned future use is conditioned upon a showing of a demand in the community for the future use having regard for the existing business or wants of the community, that the uses are considered

reasonably probable and not purely speculative and that a relationship between the future use and the present value of the land exists. See *Straughan v. Murphy,* 484 S.W.2d 465, 470 (Mo.1972), and cases there cited.

Closest in point and supportive of the court's ruling in this case is *City of St. Louis v. Paramount Shoe Mfg. Co.,* 237 Mo. App. 200, 168 S.W.2d 149 (1943). In 1928 Paramount bought a tract of land in St. Louis with 125 feet frontage on Chippewa Street, and a depth of 195 feet. Chippewa and Gravois Streets were then unimproved, and Paramount's idea was to locate in such industrial part of the city. In recognition of the insufficiency of the tract for all its purposes, Paramount also purchased an additional adjoining 35 feet. Subsequently, Paramount gave part of the tract to the city for improvement of Chippewa, and paid special benefit assessments for improvement of Chippewa and Gravois. In improvement of its premises, Paramount left 30 feet along the east side for receiving and shipping merchandise, and constructed an L-shaped building. Space was reserved for a future building design to join, when completed, the original building. The original plans provided for the future addition, including reinforced supports for such future addition. Machinery was installed so as to coordinate with machinery to be installed in the future. Construction planned for the future had not been accomplished due to depression and threat of war. The condemnation in question cut off a triangular tract in reduction of that part of the tract reserved for future expansion. The landowner adduced evidence that the taking was a hindrance to expansion of its plant facilities as planned and thereby reduced the fair market value of its entire tract. The consequential damage resulting from such limitation was chief in consideration of landowner's witnesses in fixing damages occasioned by the taking. The city's witnesses arrived at "far less" amounts than did landowner's witnesses. The city's complaint was whether it was proper to admit testimony and exhibits on hindrance to expansion as a factor to be considered in determining damages for the partial taking. Apropos Mesco's case, the court held, 168 S.W.2d l.c. 153–154 [5–10]:

"In estimating the amount of consequential damages sustained, or, in other words, the amount of the depreciation in the value of the land, the owner is entitled to have the jury informed as to all those facts relating to the condition of the property which would naturally impress a person of ordinary prudence in negotiating for the purchase of the same. The use to which the property has been devoted, and its capability or special adaption for such use, are of course primary elements to be taken into account; and anything which is directly injurious to such capability or special adaptation for a particular use, and thereby affects the market value of the property, is therefore competent to be shown as a legitimate factor in bringing about the total damage sustained for which it is contemplated that the owner shall receive just compensation.

"In the case of a business establishment, where the property (such as respondent's) is particularly suited for the special use to which it has been put, it is entirely logical that in planning the establishment, ground should have been reserved for future expansion and enlargement; and it is reasonable to assume, as respondent's evidence discloses, that the capability of the premises for such future expansion and enlargement would constitute one of the essential elements which one in that business would take into consideration in arriving at the fair market value of the property. This is not to say that compensation may be awarded upon the theory of injury to future buildings which do not exist, for of course it is true that damages may only be recovered for injury sustained as of the date of the appropriation. If the proof shows, however, that the immediate result of the appropriation is to hinder expansion so as to depreciate the market value of the property as of the date of the appropriation, it relates, in such circumstances, to a then existing fact, and is proper to be shown as one of the elements to be considered in

determining the amount of compensation to be awarded. *St. Louis, M. & S. E. R. Co. v. Continental Brick Co.,* 198 Mo. 698, 96 S.W. 1011.

"In this instance, respondent's intention to expand its plant was at all times a fixed and present one, * * *.

"There was abundant evidence to show that the hindrance to expansion resulting from the appropriation of the triangular tract was a matter directly and proximately affecting the value of the whole property as of the date of the appropriation; and such fact was therefore not only a proper element of damage to be shown by respondent, but it was competent to be shown in terms of limited production, which was the most accurate manner in which the extent of such damage was capable of ascertainment. It is to be kept in mind that the question was not one of recovery for loss of profits or for injury to business as such, all of which, in and of itself, is regarded as too speculative and remote to be considered as a basis for ascertaining the damages in a condemnation proceeding. On the contrary, the question was one of a present existing fact or condition affecting the then present value of the property as decreased by the taking of the particular portion which the city appropriated; and so regarded, respondent's evidence relating to the resulting hindrance to expansion was relevant to the issue, and the court was right in overruling the objections to its admission. *St. Louis, M. & S. E. R. Co. v. Continental Brick Co.,* supra." See also *Southwestern Bell Telephone Co. v. Webb,* 393 S.W.2d 117 (Mo. App.1965), where the landowner was permitted evidence to show that telephone easement would cause revision of plans for construction of sewer lagoon resulting in consequential damage; and *Straughan v. Murphy,* supra, where landowner was permitted to testify of intention to develop property affected by condemnation as a lake site. Compare *Northeast Missouri Electric Power Coop. v. Todd,* 401 S.W.2d 161 (Mo.App.1966), where plans of a property owner to construct an airport were too speculative to be considered in determining market value of land taken.

■ Appellant charges the court erred (III) in admission of defendant's Exhibit 18 and testimony of Carl Magers concerning interruption of materials flow due to the taking, asserting same is inadmissible evidence of business injury implying loss of profits.

There is some doubt from appellant's transcript references whether there was the necessary objection to preserve this charge for review. In any event, however, the exhibit and the testimony of Mr. Magers were same matter as the evidence heretofore held admissible on "hindrance to expansion" under *City of St. Louis v. Paramount Shoe Mfg. Co.,* supra.

Appellant charges the court erred (IV) in not granting plaintiff's motion for new trial "because in defendant's closing argument, counsel argued that defendant was an unwilling seller, intimated that plaintiff * * had acted in a negligent and tortious manner in locating the easement and, contrary to the instructions, that the location of the easement should be considered in assessing damages."

■ Appellant concedes the absence of objection to defendant's argument. As a consequence, no charge of error was preserved with respect to the argument, Rule 84.13(a); and the matters mentioned do not constitute "plain errors affecting substantial rights" within the meaning of Rule 84.13(c). *Blevins v. Cushman Motors,* 551 S.W.2d 602 (Mo. banc 1977).

■ Appellant charges the court erred (V) in not granting plaintiff's motion for new trial "because the verdict was against the weight of the competent evidence and the result of the· passion and prejudice of the jury."

■ The verdict was responsive to evidence adduced by defendant through its exhibits and the opinions of Mr. Magers and Mr. Loyd; and all such evidence has resisted attacks on its admission under appellant's points I through III, and argument thereon under point IV. Accordingly, it

515

may not be said that it was unsupported or a result of passion and prejudice arising from argument. Conflicts and disparities between such evidence and that adduced by defendant were properly for the jury to resolve. *State ex rel. State Highway Commission v. Grissom,* 439 S.W.2d 13, 17 (Mo. App.1969).

Judgment affirmed.

All concur.