**Mitchell Dale DANE, A Minor, By His Next Friend, Gary DANE, Plaintiff-Respondent,**

v.

**Hugo COZEAN, Adm. of the Estate of Richard M. Batten, Dec'd., Defendant-Appellant.**

No. 43431.

Missouri Court of Appeals, Eastern District, Division Two.

May 4, 1982.

Motion for Rehearing and/or Transfer Denied June 18, 1982.

Robert L. Nussbaumer, St. Louis, for defendant-appellant.

Kenneth A. Seufert, Farmington, Philip T. Ayers, St. Ann, for plaintiff-respondent.

PER CURIAM.

This appeal stems from a personal injury action arising out of an automobile-pedestrian accident. Jury verdict of $50,000 was in favor of plaintiff-respondent Mitchell Dane, a minor at the time of the accident. Defendant-appellant is the administrator of the estate of Richard M. Batten, driver of the automobile who apparently died of natural causes sometime after the accident. The appeal raises the following points of alleged error: (1) failure of plaintiff to make a submissible case on each of the disjunctive elements of the verdict directing instruction which was based on MAI 17.02 and 17.04; (2) wrongful injection of the insurance issue; (3) failure to allow into evidence a prior inconsistent statement of plaintiff's witness; (4) failure to exclude testimony of a witness not previously identified in interrogatories.

We affirm.

This jaded bit of litigation began in 1969. On a clear day in Flat River, four and one-half year old Mitchell Dane darted away from his father's grasp and ran or "trotted" onto Taylor Avenue from the southbound lane toward the other side of the street. Taylor Avenue is approximately twenty-three feet wide. He was struck by Batten's auto approximately two steps into the northbound lane.

Testimony of witnesses to the incident varied substantially as to speed and distances. The speed of the Batten auto at the point of impact was estimated at thirty to forty miles per hour. There was testimony that the auto was as much as eighty feet distant from the plaintiff when he began his jaunt onto Taylor Avenue, and immediately prior to the accident, Mr. Batten was observed with his head turned toward his wife who was a passenger in the front seat.

Plaintiff submitted his case on a combination of MAI 17.02 and 17.04 as his verdict director:

Your verdict must be for plaintiff if you believe:

First, either:

defendant failed to keep a careful look-out, or

defendant knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, or

swerved,

slackened his speed, or

sounded a warning, or

slackened his speed and swerved, or slackened his speed and sounded a warning, or

swerved and sounded a warning,

but defendant failed to do so, and

Second, defendant, in any one or more of the respects

submitted in paragraph First, was thereby negligent, and

Third, as a direct result of such negligence, plaintiff

sustained damage.

■ Defendant's first allegation of error is that the evidence failed to support the submission of each of the disjunctives contained in the verdict director. In considering this point, we view the evidence in the light most favorable to plaintiff, disregarding defendant's evidence except as it supports the verdict. *Ogle v. Webb*, 623 S.W.2d 582, 583–84 (Mo.App.1981). Of course, as defendant asserts, each hypothesis of negligence alleged in the disjunctive must be supported by substantial evidence. *Saupe v. Kertz*, 523 S.W.2d 826, 830 (Mo. banc 1975); *Stanfill v. City of Richmond Heights*, 605 S.W.2d 501, 502 (Mo.App.1979); *Gilpin v. Pitman*, 577 S.W.2d 72, 79 (Mo. App.1978). So we look at each submission with the foregoing precepts as guideposts.

■ Careful lookout—the driver, in this case, Mr. Batten, is required to exercise the highest degree of care to be aware of dangerous situations and conditions. *Allen v. Andrews*, 599 S.W.2d 262, 265 (Mo.App. 1980). Further, the evidence must support a finding that in so doing he could have avoided the accident by use of the means possessed but failed to do so. *Hawkins v.*

*Whittenberg*, 587 S.W.2d 358, 361 (Mo.App. 1979). From calculations based on the evidence and reasonable inferences therefrom, the jury could conclude that Batten could or should have seen the plaintiff moving into the auto's pathway and was negligent in failing to maintain a vigilant lookout. *See McColgin v. Morgan*, 592 S.W.2d 263, 267 (Mo.App.1979), and *Mullen v. McDonald*, 494 S.W.2d 694, 696 (Mo.App.1973), holding that the opportunity to have avoided an accident by careful lookout may be established by calculations and reasonable inferences from the evidence.

Failure to stop—if estimates or opinions as to time, distance and speed form the basis for determining whether or not defendant had sufficient time to stop, a jury question exists. Evidence of maximum distances at which Batten should have seen plaintiff and the minimum speed at which the auto was estimated to be traveling, coupled with normal reaction time, would allow the conclusion that the auto could have been stopped in time to have avoided the accident. *See, e.g., Turner v. Sorrels*, 624 S.W.2d 82, 85 (Mo.App.1981), and *Gassiraro v. Merlo*, 589 S.W.2d 632, 634 (Mo.App. 1979), for reaction times and speeds.

Sound a warning, slacken speed and swerve—the evidence must establish that the defendant had the means to avoid the accident. *McCreary v. Conroy*, 611 S.W.2d 234, 235 (Mo.App.1980). If the driver has time and distance to stop, he has ample time to swerve, *Kuhlmann v. Rush*, 603 S.W.2d 54, 56 (Mo.App.1980), or to give warning, *McCreary v. Conroy*, 611 S.W.2d at 235. We have found that the jury could conclude that Batten had time to stop. *A fortiori*, he had time to swerve, slacken speed or sound warning.

Defendant's second point deals with the issue of insurance.

Shortly after the accident plaintiff's father gave a statement to Mr. John Godfrey, an adjuster for State Farm Insurance Company, Mr. Batten's insurance carrier. During cross-examination of plaintiff's father, defendant used the statement which had been written by the adjuster as a source of impeachment by way of an inconsistent

statement. On redirect examination, plaintiff's attorney, over objections, was permitted to reveal the identity of the insurance adjuster. Defendant now contends that the issue of insurance was thereby wrongfully injected into the case. But no error occurred.

■ When a statement of witness is taken by another—in this case the State Farm adjuster—and used for impeachment purposes, the scrivener is not entitled to remain anonymous though a connection with an insurance company may be revealed. *Turner v. Caldwell*, 349 S.W.2d 493, 499 (Mo.App. 1961).

■ Additionally, defendant waived any objection, for during trial in cross-examination of plaintiff's father, defendant's counsel's questions specifically brought forth the issue:

Q [On cross-examination of plaintiff's father] Didn't you tell Mr. Godfrey of State Farm that your boy was going across to see Mrs. Gray, who was standing in front of the storage building on the north side of the street?

The jury, therefore, already knew of Mr. Godfrey's identification without plaintiff's aid.

■ Defendant's next complaint concerns the trial court's refusal to admit into evidence the statement given by the father to the State Farm adjuster for purposes of impeachment. But no prejudicial error occurred here. The father during his testimony admitted the specific inconsistencies between the written statement given to the adjuster and his trial testimony. In so doing his impeachment was fully developed by and through him. Further proof of impeachment by admitting the statement in evidence was unnecessary. *State ex rel. State Highway Commission v. Meadows*, 444 S.W.2d 225, 227 (Mo.App.1969).

Defendant's final contention is that the trial court erred in refusing to exclude the testimony of a witness whose name had not previously been revealed, though defendant had requested names of all witnesses. Plaintiff called the challenged witness to testify near the close of the trial's first day. After defendant objected, the trial court recessed proceedings until the next day to allow time for a deposition to be taken. The next day, after interview with defendant's counsel, the witness was permitted to testify.

■ The guiding rule in this issue is that examination of a witness whose name has not been disclosed, though requested, is a matter resting within the sound discretion of the trial court. *Bethell v. Porter*, 595 S.W.2d 369, 377 (Mo.App.1980); *Missouri Public Service Co. v. Allied Manufacturers, Inc.*, 574 S.W.2d 509, 511 (Mo.App.1978). The trial court's action in this instance in permitting the witness to testify after affording evening and overnight opportunity for deposition was not an abuse of discretion or so arbitrary or unreasonable as to demonstrate a lack of consideration. *Claude T. v. Claire T.*, 579 S.W.2d 141, 143 (Mo.App.1979); *Rose v. Grote*, 575 S.W.2d 929, 930 (Mo.App.1978).

Judgment affirmed.

All Judges concur.